IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DARELLE LEE WILKINS,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 1:23-cv-00022 ) |
| **CORP. JAMIE BRAGG, et al.,** | ) JUDGE CAMPBELL ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Darelle Wilkins, an inmate of the Hickman County Jail in Centerville, Tennessee, has filed an Amended Complaint under 42 U.S.C. § 1983 (Doc. No. 11) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 10).

The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Amended Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 10) is **GRANTED** and a $350 filing fee[1] is **ASSESSED**.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust

---

[1] While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Amended Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. Review of the Amended Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th

Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under Section 1983, which allows a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Amended Complaint must plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff alleges that his right to freely exercise his Muslim faith was violated on March 14 and 15, 2023. (Doc. No. 11 at 3–5.) On March 14, at around 10:00 p.m., Officer Sunder denied permission for Plaintiff and another inmate to "go to the library and pray in a clean area." (*Id.* at 5.) On March 15, Lt. Jamie Bragg[2] summoned Plaintiff and the other inmate into a hallway and asked them what religion they were and which way was east, and then proceeded to send them to isolated confinement "so that [they] could pray 7 times a day in a[n] area that was not clean at all." (*Id.*) Plaintiff further alleges that, even though the jail did not serve meals with pork, but only

---

[2] This individual is referred to in the caption of the Amended Complaint and on the electronic case docket, as well as in other filings, as Defendant "Bragg." In other places and filings, his last name is reported as "Braggs." For the sake of consistency with the docket, the Court will refer to him as Bragg in this Order.

3

turkey, his food was changed (presumably by Lt. Bragg on March 15) to a "no meat diet" without him asking for the change, to punish him for his Muslim faith. (*Id.*) Finally, in a grievance attached to the Amended Complaint,[3] Plaintiff reports that "Sgt. Bates came and removed us from the hole as soon as he found out that we was in the hole for [our] religion knowing that they could not do that." (*Id.* at 15.)[4]

Plaintiff claims that this mistreatment violated his rights under the Free Exercise Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (*Id.* at 3.) He sues Lt. Jamie Bragg, Officer Warren, and Officer Sunder in their individual and official capacities (*id.* at 2–3) but seeks money damages and injunctive relief "only against defendant Jamie Braggs." (*Id.* at 5.)

**C. Analysis**

Incarcerated individuals "clearly retain" the protections of the Free Exercise Clause of the First Amendment, *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), "which has been applied to the States through the Fourteenth Amendment." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). However, "an isolated incident that impacts a prisoner's right to exercise his religion does not violate the First Amendment." *Lopiccolo v.*

---

[3] In performing a PLRA screening, the Court may consider grievances and other items attached to the prisoner's pleading. *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *2 (6th Cir. May 23, 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that a district court evaluating whether a complaint fails to state a claim may consider "any exhibits attached" to the complaint)).

[4] The Court presumes that Plaintiff was removed from isolation that same day, as the Amended Complaint specifically asserts that his constitutional rights were violated on March 14 and 15, 2023, without providing any further factual detail. *See McGowan v. Cantrell*, No. 105-CV-334, 2007 WL 2509704, at *15 (E.D. Tenn. Aug. 30, 2007) ("As to McGowan's claim that he was denied his right to practice his religion when his personal religious material was confiscated on August 9, 2005, he has failed to provide any factual support or allege any facts surrounding the confiscation. Thus, it appears he was denied this material for one day."). Notably, Plaintiff specified in his original complaint that his claim was based on events that occurred on March 15 "between the times of 9:00 am and 1:00 pm." (Doc. No. 1 at 5.)

*Michigan Dep't of Corr.*, No. 2:20-12178, 2020 WL 5291961, at *2 (E.D. Mich. Sept. 4, 2020) (citing *Colvin v. Caruso*, 605 F.3d 282, 290, 293–94 (6th Cir. 2010) (holding that isolated incidents of prison officials providing non-kosher food to a Jewish prisoner did not violate the First Amendment)); *see also*, *e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) ("De minimis burdens on the free exercise of religion are not of constitutional dimension."). In this case, Plaintiff alleges that he was denied access to the library late at night on one occasion when he sought to pray there, and then was put in isolation for a period of hours the following day and had his food service changed to vegetarian meals for no reason other than to deride his assertion of Muslim faith. He also alleges that this boorish misbehavior on the part of Defendant Bragg was corrected the same day by a more scrupulous officer.

These isolated incidents, while unfortunate, do not rise to the level of a constitutional violation. *See Pitre v. Ledet*, No. CV 20-2803-JVM, 2021 WL 1784648, at *5 (E.D. La. May 5, 2021) (finding that "a one-day deprivation of a religious text simply does not rise to the level of a constitutional violation"); *Coward v. Captain Gonzales*, Civ. Action No. 7:03-CV-139, 2009 WL 918637, at *9 (M.D. Ga. Feb. 24, 2009) (dismissing prisoner's free exercise claim "because his allegations did not suggest that the withholding of the religious materials for one day interfered with his ability to practice his sincerely held religious beliefs or . . . denied him a reasonable opportunity to pursue his religion of choice"); *McGowan*, 2007 WL 2509704, at *15 ("The fact McGowan's religious books were confiscated for one day does not demonstrate he was denied reasonable opportunities to exercise his First Amendment right to religious freedom."). Accordingly, Plaintiff's claim for violation of his First and Fourteenth Amendment rights fails.

Moreover, although Plaintiff sued Defendants Bragg, *et al.* in their official as well as individual capacities, thereby attributing wrongdoing to their employer, Hickman County,[5] he does not allege that any custom or policy of Hickman County was behind the violation of his religious liberties, as required to support municipal liability. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010) (stating that claim of municipal liability cannot succeed unless "a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights") (citation omitted). Plaintiff therefore fails plausibly to claim relief under RLUIPA, which applies to "state and local governments" and prohibits them from implementing policies that "plac[e] a substantial burden on the religious exercise of any inmate" without a compelling reason. *Haight v. Thompson*, 763 F.3d 554, 558 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc–1(a)) (internal quotation marks omitted); *see Koger v. Mohr*, 964 F.3d 532, 540 (6th Cir. 2020) ("Again, to establish a claim under RLUIPA, Koger must 'demonstrate that a prison policy substantially burdens a religious practice.'") (quoting *Haight*, 763 F.3d at 559–60).

In sum, Plaintiff's claims based on the infringement of his right to practice his religion are substantially based on the de minimis interference of one officer on one day. According to both the original and Amended Complaints, besides the late-night denial of access to the jail library on March 14, 2023, the primary event giving rise to this lawsuit began and ended on March 15. Accordingly, the Amended Complaint fails to state a plausible claim to relief.

### III. CONCLUSION

For the above reasons, this action is **DISMISSED** pursuant to 28 U.S.C.

---

[5] "Official capacity claims are equivalent to claims against a defendant's employer." *Perkins v. Washburn*, No. 3:19-cv-00959, 2020 WL 3972749, at *8 (M.D. Tenn. July 14, 2020) (citing *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they represent")).

§ 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted. The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE